Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343

*Attorney for Plaintiff*
And those similarly situated

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| EMILY SUTTON, individually, and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>SENIOR LIFE INSURANCE COMPANY, a Georgia corporation, and JOHN DOE,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: 3:25-cv-00397-LS<br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff EMILY SUTTON, individually and on behalf of all others similarly situated, brings this First Amended Class Action Complaint against SENIOR LIFE INSURANCE COMPANY ("Senior Life" or "Defendant") and JOHN DOE ("Defendant" or together, "Defendants") to stop their illegal practice of placing unsolicited phone calls with artificial or prerecorded voice messages, and to obtain redress for all persons injured by their conduct.

**NATURE OF THE ACTION**

1. Defendant Senior Life Insurance Company is a life insurance agency. As a part of its marketing, Defendant hired John Doe to place thousands of unsolicited phone calls with prerecorded voice messages to solicit new business.

2. Defendants did not obtain express written consent prior to placing these unsolicited phone calls, and, therefore, is in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. By placing phone calls using prerecorded voice messages to people who have registered their phone numbers on the national database, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

6. Plaintiff therefore seeks an injunction requiring Defendants to stop calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

7. Plaintiff EMILY SUTTON is a natural person residing in El Paso, Texas.

8. Defendant SENIOR LIFE INSURANCE COMPANY is a corporation organized and existing under the laws of Georgia.

9. Defendant JOHN DOE is an unknown business entity doing business as "Final Life Expense."

## JURISDICTION AND VENUE

10. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

11. This Court has specific personal jurisdiction over Defendants because Defendants caused the violating phone calls to be sent to Plaintiff in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury substantially occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

13. Defendant Senior Life is an insurance agency.

14. Senior Life hired John Doe to place calls using prerecorded messages as "Final Life Expense" and then transfer responsive leads to Senior Life.

15. John Doe placed multiple unsolicited phone calls soliciting Plaintiff and the putative class for Senior Life's services.

16. The calls played an artificial or prerecorded voice message.

17. Senior Life solicited the leads generated by John Doe's illegal phone calls.

18. Defendants failed to obtain consent from recipients.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

19. On February 4, 2025, Plaintiff received a call from an artificial or prerecorded voice advertising life insurance on her phone number ending in 2388. The call came from 915-741-7326. The message said that she could "press one." Plaintiff pressed one to identify who was calling, but the call was dropped.

20. On the same day, David with "Final Life Expense" called her back. She engaged with the caller.

21. The same day, she received an email from Defendant Senior Life Insurance Company.

22. The email she received is attached as Exhibit A.

23. Plaintiff never gave prior express written consent.

24. None of the alleged calls were made for emergency purposes.

25. Defendants are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any registration by Defendant.

26. Defendants do not qualify for an exemption under § 302.053.

27. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of her phone because the phone line was tied up during the telemarketing calls and her privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

28. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using her telephone for lawful purposes.

## BASIS FOR LIABILITY

29. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

30. Even if Senior Life did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

31. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

32. Senior Life authorized and hired JOHN DOE to generate prospective customers through illegal telemarketing calls.

33. Accordingly, the FCC has explained that its rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.

34. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence

of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *In re DISH Network*, 28 FCC Rcd 6574, 6586 (2013).

35. Senior Life hired JOHN DOE to solicit Plaintiff using artificial or prerecorded voices. Accordingly, JOHN DOE had Senior Life's actual authority to solicit Plaintiff through illegal telemarketing calls.

**APPARENT AUTHORITY**

36. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

37. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 FCC Rcd at 6592 (¶ 46).

38. Senior Life authorized JOHN DOE to generate prospective business for Senior Life through illegal telemarketing.

39. JOHN DOE called and solicited Plaintiff for life insurance services on behalf of Senior Life. The integration of their sales efforts was so seamless that it appeared to Plaintiff that all Defendants appeared to be acting together as the same company.

40. Plaintiff reasonably believed and relied on the fact that JOHN DOE had received

permission to sell, market, and solicit the services of Senior Life.

41. As a direct and proximate result of the alleged illegal phone calls – which were made on behalf of and with the apparent authority of Senior Life, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

**RATIFICATION**

42. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

43. Senior Life knowingly and actively accepted business that originated through the illegal calls placed by JOHN DOE.

44. By accepting these contacts with the robocall victims, JOHN DOE "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Senior Life, as described in the Restatement (Third) of Agency.

45. JOHN DOE called Plaintiff to solicit her for insurance services on behalf of all Senior Life.

46. Senior Life received Plaintiff as a new prospective customer from JOHN DOE.

47. Senior Life ratified JOHN DOE's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

48. Senior Life further ratified JOHN DOE's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

49. As a direct and proximate result of the alleged illegal phone calls, Plaintiff and Class members suffered actual damages, including their wasted time answering the violating calls, the monies paid to receive the calls, invasion of their privacy and the nuisance of receiving the calls.

50. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a

"nuisance and invasion of privacy."

51. Class Definition: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

## CLASS ALLEGATIONS

52. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> i. **TCPA Class**. All persons in the United States who: (1) from the last 4 years from the filing of the initial complaint to the present (2) Defendants initiated a call containing an artificial or prerecorded voice their phone number.
>
> ii. **Texas TCPA Subclass**. All persons in Texas who: (1) from the last 4 years from the filing of the initial complaint to the present (2) Defendants initiated a call containing an artificial or prerecorded voice to their phone number.
>
> iii. **Texas Registration Class**. All persons in Texas who: (1) from the filing of the initial complaint to the present (2) Defendants initiated a telemarketing call (3) without a Texas Telemarketing Registration Certificate.

53. The following people are excluded from each Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

54. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants

placed phone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

55. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited messages.

56. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

57. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

58. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a. Whether the phone calls were caused by Defendant;

b. Whether Defendants obtained prior express written consent from Class members;

c. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendant's conduct.

d. Whether Defendants held a Texas Telemarketing Registration Certificate;

59. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice Messages**
**(On behalf of Plaintiff and the TCPA Class)**

60. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61. John Doe placed telephone calls to Plaintiff's and the Class members' telephones without having their prior express written consent to do so.

62. The calls played an artificial or prerecorded voice message.

63. Those people who pressed 1 in response would be called back and/or solicited by Senior Life.

64. As a result of its unlawful conduct, Defendants invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

65. Defendants conducted this scheme involving the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

66. Plaintiff seeks $1500 per violation under 47 U.S.C. § 227(b)(3)(C) based on Defendants' willful and/or knowing conduct.

## SECOND CAUSE OF ACTION
**Violations of The Texas Bus. & Com. Code § 305.053**
**(On behalf of Plaintiff and the Texas Subclass)**

67. Plaintiff incorporates the foregoing allegations as if set forth herein.

68. The foregoing acts and omissions of Defendants constitute multiple violations of the Texas Bus. & Com. Code § 305.053, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without prior express written consent in violation of 47 U.S.C. § 227 et seq.

69. John Doe placed the illegal calls that played an artificial or prerecorded voice, and then Senior Life solicited its insurance products.

70. Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. Texas Bus. & Com. Code 305.053(b).

71. Plaintiff seeks $1,500.00 in damages for each such knowing or willful violation pursuant to Texas Bus. & Com. Code § 305.053(c).

**THIRD CAUSE OF ACTION**
**Violations of Texas Bus. & Com. Code 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**

72. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

73. John Doe made solicitation sales calls to Plaintiff for solicitation by Senior Life without having a valid telephone solicitation registration certificate as required under Tex. Bus. & Com. Code § 302.101.

74. As a result of Defendants' violations of Tex. Bus. & Com. Code § 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. & Com. Code § 302.302(a).

75. Plaintiff's attorney sent a notice of violation and demand for damages pursuant to the Texas Deceptive Trade Practices Act, Texas Bus. & Com. Code § 17.505(a) to Senior Life.

76. As a result of Defendants' violations of Tex. Bus. & Com. Code § 302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff EMILY SUTTON, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 227(b) of the TCPA, and §§ 302.101, 305.053 of the Texas Business and Commerce Code;

C. An order declaring that Defendants' conduct was willful and knowing;

D. An order declaring that Senior Life is vicariously liable for the violations of JOHN DOE;

E. An award of $1,500 per call in statutory damages arising from § 227(b) for each intentional violation;

F. An award of $1,500 in statutory damages arising from each violation of the Texas Bus. & Com. Code § 305.053;

G. An award of $5,000 in statutory damages arising from each violation of the Texas Bus. & Com. Code § 302.101;

H. An injunction requiring Defendants to cease all unlawful phone calls;

I. An award of reasonable attorneys' fees and costs; and

J. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: November 13, 2025

Respectfully submitted,

By: /s/ Mark L. Javitch

Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date stated below, the foregoing was filed through the Court's electronic filing system and will be sent electronically to all parties of record via the Court's electronic filing system. Executed at San Mateo County, California.

Date: November 13, 2025

/s/ Mark L. Javitch
Mark L. Javitch